## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

JULIE A. WITT                                                           PLAINTIFF

v.                        CASE NO. 3:21-CV-00212-BSM

CHANTILLY S. REDDMANN                                                   DEFENDANT

## ORDER

This case was tried to the bench on January 8, 2024.  Having listened to the testimony and reviewed the exhibits introduced into evidence, judgment is entered for Chantilly S. Reddmann, and the Clerk of Court is directed to send the $9,970.68, plus interest accrued, deposited in the registry of the court by the Baltimore Life Insurance Company for Policy Number A 1073088 to Chantilly S. Reddmann.

### I.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

John S. Reddmann purchased a whole life insurance policy with Baltimore Life Insurance Company on January 15, 2009, and named Chantilly S. Reddmann, his only daughter, as his beneficiary.  Exhibit 1.  On April 24, 2018, John named Chantilly as his power of attorney.   Exhibit 2.  On April 20, 2020, Baltimore Life received a Beneficiary/Name/Address Change Form purporting to change John's beneficiary designation, and naming Julie A. Witt as the beneficiary of the policy.  This designation form was not authenticated at trial and is therefore not in evidence.

In addition to trial exhibits 1 and 2 (the only documents received into evidence at trial), the uncontested testimony of Chantilly is that John did not possess the intent or mental

capacity to strike her as a beneficiary of his policy or to name Witt as the beneficiary.

The rights of designated beneficiaries of insurance policies are determined according to contractual law. *Allen v. First Nat. Bank of Fort Smith*, 261 Ark. 230, 235, 547 S.W.2d 118, 120 (1977). When the holder of a life insurance policy expresses his intention in a written instrument in clear and unambiguous language, the agreement is construed according to its plain meaning. *See Acklin v. Riddell*, 42 Ark. App. 230, 234, 856 S.W.2d 322, 324 (1993) (citing *C. & A. Constr. Co. v. Benning Constr. Co.*, 256 Ark. 621, 509 S.W.2d 302 (1974)). The holder of a life insurance policy may change the beneficiary in the manner and mode prescribed by the policy. *Nunnenman v. Est. of Grubbs*, 2010 Ark. App. 75, at 3, 374 S.W.3d 75, 78. Substantial compliance with the policy's procedures is required to change a beneficiary. *James v. Mounts*, 2023 Ark. 53, at 11, 660 S.W.3d 801, 808.

In a bench trial, the court bases its findings on admissible evidence only. *See Williams v. Illinois*, 567 U.S. 50, 69–70 (2012). The only evidence received at trial are exhibits 1 and 2 and the uncontested testimony of Chantilly S. Reddmann. Based on this evidence, Chantilly S. Reddmann is the beneficiary of Policy Number A 1073088, John B. Reddmann's life insurance policy with the Baltimore Life Insurance Company.

## II. CONCLUSION

For the foregoing reasons, judgment is entered for Chantilly S. Reddmann. The Clerk of Court is directed to pay the $9,970.68, plus interest accrued, deposited into the registry of the court by the Baltimore Life Insurance Company, to Chantilly S. Reddmann.

IT IS SO ORDERED this 8th day of January, 2024.

_____
UNITED STATES DISTRICT JUDGE



# The Baltimore Life
C O M P A N I E S

# Whole Life Insurance Policy

This policy insures the life of the Insured. It also gives important benefits to <u>you,</u> the Policy Owner. The Baltimore Life Insurance Company **(we)** will pay the death benefit to the Beneficiary when we receive proof of the Insured's death.

This policy is a legal contract between you and us. **Please read it carefully.**

**<u>TAKE A 10 DAY FREE LOOK.</u> YOU CAN RETURN THIS POLICY TO THE AGENT WHO SOLD IT TO YOU OR TO OUR HOME OFFICE WITHIN 10 DAYS AFTER YOU RECEIVE IT. IF YOU DO, WE'LL REFUND ANY PREMIUM PAID. THE POLICY WILL THEN BE TREATED AS IF IT WERE NEVER ISSUED.**

This is a Whole Life Insurance Policy. Insurance is payable at the Insured's death. Premiums are payable for the period shown on the Policy Data Page. This policy is nonparticipating and is not eligible to receive dividends.

President

Secretary

In the event you have questions, need information concerning this coverage or if you need assistance in resolving complaints, please contact us at:

**THE BALTIMORE LIFE INSURANCE COMPANY**
**10075 Red Run Boulevard**
**Owings Mills, Maryland 21117-4871**
**1-800-628-5433**
**A STOCK COMPANY**
**www.baltlife.com**

FORM 7870(AR)

EXHIBIT 1

## Policy Guide

**Major Sections**                                          **Page**
Policy Data and Values  ................................................. 1
Basic Policy Facts  ....................................................... 2
Beneficiary & Owner  .................................................... 2
Settlement at Death of the Insured  ............................... 3
Premium Payments  ..................................................... 4
Cash Value Benefits for You  ......................................... 5
Other Important Terms  ................................................ 7
Riders/Endorsements
Copy of Application(s)



The Baltimore Life
C O M P A N I E S

# NOTICE TO POLICYOWNERS:

On the cover of this policy is a notice about your "Free Look."  The free look period begins the day you receive your policy.  During this period you can return the policy to your agent or to the home office and we will refund any premium paid.  The policy will be treated as if it was never issued.

**If this policy replaces a policy from another company or an existing policy with Baltimore Life, your free look period is 30 days, even though a shorter time period may be shown on the cover of your policy.**

**PENNSYLVANIA POLICYOWNERS ONLY: If this policy replaces a policy from another company, your free look period is 30 days. However, under Pennsylvania law, if this policy replaces an existing Baltimore Life policy, your free look period is 45 days. These provisions apply even though a shorter time period may be shown on the cover of your policy.**

If you have any questions about your policy, please contact your agent or our Customer Service Department in the home office at 1-800-628-5433.

Form 8050

01/05/09               **THE BALTIMORE LIFE INSURANCE COMPANY**

## POLICY DATA PAGE

THIS PAGE SHOWS SPECIFIC INFORMATION ABOUT THIS POLICY AND IS REFERRED TO THROUGH-OUT THE POLICY.

| | | | |
|---|---|---|---|
| INSURED | JOHN B REDDMANN | MALE  64 | SEX / ISSUE AGE |
| POLICY DATE | JANUARY 15, 2009 | A 1073088 | POLICY NUMBER |
| FACE AMOUNT | $14,000.00 | STANDARD | PREMIUM CLASS |
| OWNER | JOHN B REDDMANN | | |

### SCHEDULE OF BENEFITS AND PREMIUMS

| DESCRIPTION OF POLICY PLAN AND ATTACHED AGREEMENTS | ANNUAL PREMIUM | PAYABLE FOR |
|---|---|---|
| WHOLE LIFE INSURANCE POLICY TOBACCO | $1,150.00 | 36 YEARS |
| $14,000 - ACCIDENTAL DEATH BENEFIT RIDER JOHN B REDDMANN | $22.68 | 6 YEARS |

TOTAL ANNUAL PREMIUM AS OF JANUARY 15, 2009  -  $1,172.68

TOTAL PREMIUM ON OTHER MODES IS AS FOLLOWS:

| ANNUAL | SEMI-ANNUAL | QUARTERLY | MONTHLY BANK DRAFT* |
|---|---|---|---|
| $1,172.68 | $621.52 | $316.62 | $105.54 |

\*   MONTHLY BANK DRAFT - A RATE AVAILABLE IF WE ARE AUTHORIZED BY YOU TO RECEIVE PREMIUM PAYMENTS DIRECTLY FROM YOUR BANK ACCOUNT. IF WE DO NOT RECEIVE PAYMENT FROM YOUR ACCOUNT DUE TO INSUFFICIENT FUNDS, WE MAY CHANGE YOUR MODE OF PREMIUM PAYMENT TO MONTHLY DIRECT BILL. IN THAT EVENT, YOUR MONTHLY PREMIUM WILL BECOME $117.27.

THE PREMIUMS FOR A BENEFIT ARE PAYABLE FOR THE NUMBER OF YEARS SHOWN, BUT NOT BEYOND THE END OF THE POLICY MONTH IN WHICH THE INSURED'S DEATH OCCURS.

FORM 7870          L50NT              1              WHOLE LIFE INSURANCE POLICY
                                                                     TOBACCO

01/05/09                    **THE BALTIMORE LIFE INSURANCE COMPANY**

INSURED          JOHN B REDDMANN                    $14,000.00   FACE AMOUNT

POLICY NUMBER    A 1073088

## TABLE OF GUARANTEED CASH VALUE BENEFITS

| END OF POLICY YEAR | AGE | JANUARY 15 | CASH VALUE* | REDUCED PAID UP INSURANCE* | EXTENDED TERM INSURANCE* | | |
|---|---|---|---|---|---|---|---|
| | | | | | YEARS | DAYS | ENDOWMENT |
| 1 | 65 | 2010 | $ 0.00 | $ 0.00 | 0 | 0 | $ 0.00 |
| 2 | 66 | 2011 | $ 0.00 | $ 0.00 | 0 | 0 | $ 0.00 |
| 3 | 67 | 2012 | $ 378.00 | $ 751.58 | 1 | 127 | $ 0.00 |
| 4 | 68 | 2013 | $ 784.00 | $ 1,513.57 | 2 | 204 | $ 0.00 |
| 5 | 69 | 2014 | $ 1,204.00 | $ 2,257.79 | 3 | 209 | $ 0.00 |
| 6 | 70 | 2015 | $ 1,624.00 | $ 2,959.25 | 4 | 132 | $ 0.00 |
| 7 | 71 | 2016 | $ 2,058.00 | $ 3,645.74 | 5 | 7 | $ 0.00 |
| 8 | 72 | 2017 | $ 2,492.00 | $ 4,294.72 | 5 | 199 | $ 0.00 |
| 9 | 73 | 2018 | $ 2,926.00 | $ 4,909.80 | 5 | 346 | $ 0.00 |
| 10 | 74 | 2019 | $ 3,360.00 | $ 5,493.40 | 6 | 90 | $ 0.00 |
| 11 | 75 | 2020 | $ 3,780.00 | $ 6,025.50 | 6 | 158 | $ 0.00 |
| 12 | 76 | 2021 | $ 4,214.00 | $ 6,553.55 | 6 | 210 | $ 0.00 |
| 13 | 77 | 2022 | $ 4,648.00 | $ 7,057.13 | 6 | 243 | $ 0.00 |
| 14 | 78 | 2023 | $ 5,068.00 | $ 7,518.59 | 6 | 254 | $ 0.00 |
| 15 | 79 | 2024 | $ 5,488.00 | $ 7,962.79 | 6 | 255 | $ 0.00 |
| 16 | 80 | 2025 | $ 5,894.00 | $ 8,372.32 | 6 | 240 | $ 0.00 |
| 17 | 81 | 2026 | $ 6,286.00 | $ 8,750.76 | 6 | 213 | $ 0.00 |
| 18 | 82 | 2027 | $ 6,664.00 | $ 9,100.79 | 6 | 176 | $ 0.00 |
| 19 | 83 | 2028 | $ 7,028.00 | $ 9,423.85 | 6 | 129 | $ 0.00 |
| 20 | 84 | 2029 | $ 7,392.00 | $ 9,740.51 | 6 | 81 | $ 0.00 |
| 21 | 85 | 2030 | $ 7,742.00 | $ 10,034.35 | 6 | 28 | $ 0.00 |
| 22 | 86 | 2031 | $ 8,078.00 | $ 10,308.12 | 5 | 343 | $ 0.00 |
| 23 | 87 | 2032 | $ 8,386.00 | $ 10,546.47 | 5 | 292 | $ 0.00 |
| 24 | 88 | 2033 | $ 8,680.00 | $ 10,769.21 | 5 | 243 | $ 0.00 |
| 25 | 89 | 2034 | $ 8,960.00 | $ 10,977.37 | 5 | 195 | $ 0.00 |
| 26 | 90 | 2035 | $ 9,226.00 | $ 11,171.39 | 5 | 147 | $ 0.00 |
| 27 | 91 | 2036 | $ 9,478.00 | $ 11,349.28 | 5 | 100 | $ 0.00 |
| 28 | 92 | 2037 | $ 9,730.00 | $ 11,524.47 | 5 | 57 | $ 0.00 |
| 29 | 93 | 2038 | $ 9,996.00 | $ 11,710.86 | 5 | 27 | $ 0.00 |
| 30 | 94 | 2039 | $ 10,262.00 | $ 11,888.10 | 5 | 1 | $ 0.00 |

FORM 7870              L50NT              1.1

01/05/09                          **THE BALTIMORE LIFE INSURANCE COMPANY**

INSURED              JOHN B REDDMANN                        $14,000.00   FACE AMOUNT

POLICY NUMBER     A 1073088

### TABLE OF GUARANTEED CASH VALUE BENEFITS

| END OF POLICY YEAR | AGE | JANUARY 15 | CASH VALUE* | REDUCED PAID UP INSURANCE* | EXTENDED TERM INSURANCE* | | |
|---|---|---|---|---|---|---|---|
| | | | | | YEARS | DAYS | ENDOWMENT |
| 1 | 65 | 2010 | $ 0.00 | $ 0.00 | 0 | 0 | $ 0.00 |
| 6 | 70 | 2015 | $ 1,624.00 | $ 2,959.25 | 4 | 132 | $ 0.00 |
| 10 | 74 | 2019 | $ 3,360.00 | $ 5,493.40 | 6 | 90 | $ 0.00 |
| 20 | 84 | 2029 | $ 7,392.00 | $ 9,740.51 | 6 | 81 | $ 0.00 |

AMOUNTS CHANGE PROPORTIONATELY DURING POLICY YEARS.

*THESE NUMBERS WILL CHANGE IF THERE ARE ANY LOANS. THE AMOUNT OF ANY REDUCED PAID-UP INSURANCE AND THE PERIOD AND ENDOWMENT OF ANY EXTENDED TERM INSURANCE WILL BE DETERMINED BY APPLYING THE NET CASH VALUE OF THIS POLICY AS A NET SINGLE PREMIUM FOR SUCH INSURANCE.

CASH VALUE, REDUCED PAID-UP, AND EXTENDED TERM INTEREST RATE:  5.0% ANNUALLY.

MORTALITY TABLE:    CASH VALUES AND REDUCED PAID-UP - 2001 CSO, ALB, MALE
                          EXTENDED TERM - 2001 CSO, ALB, MALE

FORM 7870                     L50NT                     1.2

# BASIC POLICY FACTS

This section gives important information about your policy.

This **policy** is the entire agreement between you and us. The policy includes the attached copy of the application and any attached riders or endorsements. All agreements made by us must be signed by our President, a Vice President or the Secretary. No other person, including an insurance agent, can:

> • change any of this policy's terms;

> • extend the time for paying premiums; or

> • make any agreement binding on us.

**Policy date** is the date this policy goes into effect. Policy months and years are measured from the policy date. A **policy anniversary** occurs each year on the month and day of the policy date.

| | |
|---|---|
| **THE INSURED** | This policy provides insurance coverage on the life of the **Insured** whose name is on the Policy Data Page. |
| **ISSUE AGE** | is based on the actual age of the Insured on the policy date. It is shown on the Policy Data Page. In this policy, **age** means actual age on the Insured's last birthday. |

## BENEFICIARY & OWNER

| | |
|---|---|
| **THE BENEFICIARY** | is the person entitled to receive the death benefit. |
| **CONTINGENT BENEFICIARY** | We will pay the death benefit to the primary Beneficiary if living at the Insured's death. If the primary Beneficiary has died, the death benefit will be paid to any contingent beneficiary. |
| **IRREVOCABLE BENEFICIARY** | if named, cannot be changed. This policy cannot be assigned without the consent of an irrevocable Beneficiary. |
| **CHANGE IN BENEFICIARY** | Unless the Beneficiary is irrevocable, you can change Beneficiary or contingent Beneficiary while the Insured is alive. A request to change must be in a form satisfactory to us and recorded at our Home Office. We may require the policy to note the change on it. Once the change is recorded by us, it |

FORM 7870(AR)                                         2

will take effect as of the date the request was signed. We will not be responsible for the validity of the change or any payment made or other action taken by us before we record the change at our Home Office.

**THE OWNER**

The Insured will be the Owner of this policy unless the application names another Owner. You may change the Owner.

While this policy is in effect, unless otherwise provided, you as the Owner have all the rights in this policy. If you die while this policy is in effect your estate becomes the Owner.

**ASSIGNMENT**

You can assign this policy. You will need the consent of all irrevocable Beneficiaries. An assignment does not change the ownership. We will not be responsible for the validity of the assignment or any payment we make before we receive notice of the assignment at our Home Office. The assignment is subject to any policy debt.

## SETTLEMENT AT DEATH OF THE INSURED

If the Insured dies, we'll pay the death benefit to the Beneficiary in a single lump sum. The death benefit is payable as provided in this policy from our Home Office when we receive due proof of the death of the Insured while this policy is in effect.  A death benefit not paid within thirty days of receipt of due proof of death of the insured shall earn interest at the rate not less than required by Arkansas law.

**Determining the Death Benefit**

The death benefit will include:

- • the face amount provided by this policy, as shown on the Policy Data Page;
- • any insurance provided by riders; and
- • the part of any premium paid for a period beyond the month of death.

We will subtract:

- • any policy debt; and
- • one month's premium if death occurs during the grace period.

## PREMIUM PAYMENTS

The first premium is due on or before the policy date. After that, a premium is due on the first day of the period it covers.  Premiums are payable during the Insured's lifetime for the number of years shown on the Policy Data Page.

### Where and When to Pay Premiums

All premiums after the first are payable at our Home Office. Premiums can also be paid to an authorized agent who will give you a receipt signed by our President, a Vice President or the Secretary. The Policy Data Page shows the period and frequency of premium payment. On any policy anniversary, you can request a change in the payment frequency.

### Grace Period

If any premium after the first is not paid when due, this policy will continue in effect for 31 days. This is called the **grace period**. If the Insured dies during the grace period, the unpaid premium will be deducted from the death benefit.

### Continuation of Coverage Under Automatic Premium Loan

You may request this option in the application.  You may also request this option in writing, in which case it must be recorded at our Home Office before the end of the grace period for an unpaid premium.  Unless you request this option, it will not be in effect.

If:     • a premium remains unpaid on the last day of the grace period, and
        • the net cash value of this policy exceeds the unpaid premium,

we will automatically loan the amount needed to pay the premium (**see Cash Value Benefits For You**).

You may notify us in writing at any time if you do not wish coverage continued in this manner.

If the net cash value is less than the amount needed to pay the premium, and the premium is payable annually, semiannually, or quarterly, the next smaller modal premium will be paid by automatic premium loan. If the net cash value is less than a monthly premium, no automatic premium loan will be made and the policy will end unless continued under a cash value benefit.

### How to Reinstate This Policy

If any premium remains unpaid after the grace period, you may request reinstatement of this policy. You must do this within five years from the due date of the first unpaid premium.

You'll have to provide evidence satisfactory to us that the Insured's insurability has not changed since this policy was issued. You'll also have to pay all unpaid premiums plus interest at the annual rate of 6%. Any policy debt will be reinstated if not repaid.

# CASH VALUE BENEFITS FOR YOU

This policy has cash value benefits while the Insured is alive. These benefits may be used by you. The **Table of Guaranteed Cash Value Benefits** shows the first policy year for which there is cash value. When a premium has been paid in that year, your cash value benefits start.

Cash values in the Table assume that premiums have been paid to the end of the policy year, and that there is no policy debt.  On request, we'll tell you the cash value for any date not in the Table.

The **net cash value** at any time equals the cash value of the policy, less any policy debt.

## You Can Borrow Money Against the Policy

You can borrow money against the policy whenever it has a net cash value. The most we'll loan is an amount that, together with interest and any unpaid premiums to the end of the current policy year, will not exceed the net cash value of the policy at the end of that current policy year. You cannot borrow money against this policy if it is being continued as extended term insurance.

We can delay making the loan for up to 6 months after we receive your request, except for any portion to be used to pay premiums on policies with us.

Loan interest will not exceed an annual rate of 8% and is added to the loan balance at the end of each policy year while the loan is outstanding. We will not increase the loan rate more than once in a 12 month period. If you have any policy debt outstanding, we will give you 30 days notice before any loan interest rate change.  Any interest not paid will become part of the loan and will accrue interest.

We call the total amount of all outstanding loans (with accrued interest) the **policy debt.** You can repay the policy debt in part or in full at any time while the Insured is alive and this policy is in effect. The minimum loan repayment is $25, except that you can always pay any amount that fully repays the policy debt.

If the policy debt exceeds the cash value of this policy, this policy will end 31 days after we send you notice.  We'll send notice to anyone to whom you have assigned this policy.  All coverage will end even if you send a loan repayment after that time.  This policy may then only be reinstated by application. See **Premium Payments.**

Any policy debt outstanding at the Insured's death will reduce the death benefit payable under this policy. See **Settlement at Death of the Insured.**

## You Can Return the Policy for Cash

This policy can be returned with a written request for its net cash value. The policy will end when we pay this amount. We can delay payment of this policy's net cash value for up to 6 months after we receive your request.

FORM 7870(AR)                                    5

**You Can Continue Coverage as Reduced Paid-Up Insurance**

This policy's net cash value can be used to purchase Reduced Paid-Up Insurance. The Table of Guaranteed Cash Value Benefits shows the cash value and how much Reduced Paid-Up Insurance it can purchase. Your net cash value may be different from the cash value shown.

After this benefit starts, this policy will continue to have a cash value while the Insured is alive but will not include any additional benefits or riders. The cash value will be the single premium for the amount of insurance provided. The cash value of any Reduced Paid-Up Insurance within 30 days after a policy anniversary shall not be less than the cash value on that anniversary.

You can borrow against the cash value of any Reduced Paid-Up Insurance.

**You Can Continue Coverage as Extended Term Insurance**

If this policy is in a standard premium class, its net cash value can be used to purchase Extended Term Insurance. The amount of such insurance will be the face amount of this policy less any policy debt. This policy's net cash value will determine how long the Extended Term Insurance will last.  If the net cash value is more than sufficient to purchase Extended Term Insurance to the Insured's age 100, the excess net cash value will be applied to purchase an endowment at that age.

The Table of Guaranteed Cash Value Benefits shows the cash value and the period of Extended Term Insurance it can purchase. Your net cash value may be different from the cash value shown.

After this benefit starts, this policy will continue to have a cash value while the Insured is alive and the extended term period has not ended, but it will not include any additional benefits or riders. The cash value will be the single premium for the amount of insurance and any endowment provided. The cash value of any Extended Term Insurance within 30 days after a policy anniversary shall not be less than the cash value on that anniversary.

You cannot borrow against the cash value of any Extended Term Insurance.

**Using Cash Value After A Premium Remains Unpaid**

If a premium remains unpaid at the end of a grace period, coverage will end as of the due date of that premium unless the policy has a net cash value. If so, and you have not requested a cash value benefit, coverage under this policy may be continued under automatic premium loan (see **Continuation of Coverage Under Automatic Premium Loan).**

You may select a cash value benefit during the 60 days following the due date of the unpaid premium.  If no option is elected, we will continue coverage under the Reduced Paid-Up Insurance option (see **You Can Continue Coverage as Reduced Paid-Up Insurance**).

FORM 7870(AR)                                              6

**Basis of Computations**

We use the mortality table shown in the Table of Guaranteed Cash Value Benefits in computing cash values, Reduced Paid-Up Insurance amounts, and Extended Term Insurance benefit periods and endowments.

In our computation of these values, we assume interest at an annual rate shown in the Table of Guaranteed Cash Value Benefits. We also assume that premiums are received at the start of each policy year and that death occurs at the end of the policy year.  Cash values and paid-up insurance values for policy anniversaries after those shown in the Table of Guaranteed Cash Value Benefits are calculated in accordance with the Standard Nonforfeiture Value Method using the adjusted premium as defined in the laws of the state in which this policy was delivered.

We have filed a detailed statement of the method we use to compute cash value benefits with the state where this policy was delivered. All values are greater than or equal to those required by the laws of the state.

## OTHER IMPORTANT TERMS

**Nonparticipating**

This policy is nonparticipating and is not eligible to receive dividends.

**This Policy Is a Contract**

This policy is a contract. In entering into this contract, we relied on the accuracy of the statements made in the application. In the absence of fraud, these statements are considered representations and not warranties. We can contest this policy and use statements made in the application in defense of a claim if the application contains a material misstatement and a copy of the application was attached to this policy when it was issued.

**Contesting This Policy**

We will not contest this policy after it has been in effect while the Insured is living for two years from the policy date. However, we can end the policy whenever a premium is not paid within the grace period, unless the policy is continued under a cash value benefit (see **Cash Value Benefits for You).**

**Mistake in Age or Sex**

If the Insured's age or sex is misstated in the application, the death benefit will be based on the face amount of insurance that the premium paid would have bought at the true age and sex.

**Suicide**

If the Insured commits suicide, while sane or insane, within two years after the policy date, our liability payable under this policy will be limited to the sum of all premiums paid less any policy debt.  This amount will be paid to the Beneficiary in a single sum.

**Written Notices**

Send any required written notices to our Home Office at:

**The Baltimore Life Insurance Company**
**10075 Red Run Boulevard**
**Owings Mills, Maryland 21117-4871**

Please include the policy number.

If we at The Baltimore Life Insurance Company fail to provide you with reasonable and adequate service, you should feel free to contact:

Arkansas Insurance Department
Consumer Services Division
1200 West Third Street
Little Rock, Arkansas  72201
1-800-852-5494

**THE BALTIMORE LIFE INSURANCE COMPANY**
**10075 Red Run Boulevard**
**Owings Mills, Maryland 21117-4871**

# ACCIDENTAL DEATH BENEFIT RIDER

## Basic Rider Facts

This rider provides accidental death insurance on the **Insured**.  The rider includes the attached copy of the application for it.  The rider adds a benefit to and is part of the policy to which it is attached.

The **rider date** is the date this rider goes into effect.  It is the policy date unless a different rider date is shown on the Policy Data Page.  A **rider anniversary** occurs each year on the anniversary of the rider date.

The **rider expiry date** is the date all insurance under this rider ends.  It is shown on the Policy Data Page.

Insurance under this rider ends when the first of the following occurs:

- the rider expiry date arrives;
- you request to end the rider;
- the rider anniversary next following the Insured's 70th birthday arrives;
- a rider premium is not paid when due (subject to the grace period);
- the policy ends; or
- the policy is continued as extended term insurance or reduced paid-up insurance.

The **Insured** is the person insured under this policy.

You, the Owner of this policy, are also the **Owner** of this rider.

## ACCIDENTAL DEATH BENEFIT

We will pay the accidental death benefit to the Beneficiary when we receive proof of the accidental death of the Insured occurring:

- while this policy and this rider are in effect;
- on or after the rider date;
- before the rider expiry date; and
- solely through external, violent, and accidental bodily injury; and
- within 90 days after the injury that caused the Insured's death.

FORM 7922                                     1

We will pay the accidental death benefit under this rider in addition to the death benefit of this policy. The amount of the accidental death benefit is shown on the Policy Data Page.  When we pay the accidental death benefit, this rider will end.

## PREMIUM PAYMENTS

The first premium for this rider is due on the rider date. After that, a rider premium is due on the first day of the period it covers.  (See the Policy Data Page.)

## DEATH NOT COVERED BY THIS RIDER

We will not pay the accidental death benefit under this rider if the death of the Insured results solely or partially from:

- suicide, or attempted suicide, while sane or insane;
- injury that occurred before the rider date;
- mental or bodily infirmity, illness, disease, or infection (except where death results from an infection which occurs directly as the consequence of an accidental cut or wound);
- the voluntary taking, administering, absorbing, or inhaling of poisons, gases, or fumes (except for on-the-job accidents);
- the voluntary taking of any drug not prescribed for the Insured by a doctor;
- the voluntary taking of any drug prescribed for the Insured by a doctor and intentionally not taken as prescribed;
- abusive use of alcohol by the Insured, including having a blood alcohol concentration above the maximum level permitted by the law of the state in which this rider was issued for operation of a motor vehicle (whether or not death results from operating a motor vehicle);
- medical or surgical treatment;
- committing or attempting to commit a misdemeanor or a felony;
- war (declared or undeclared) or other armed conflict, insurrection, or participation in a riot;
- service in any armed force engaged in a military conflict, whether or not declared; or
- travel or flight in or descent from any kind of aircraft, if the Insured has any duties on board, or if the Insured is flying in the course of any training or instruction, or in maneuvers of any armed force.

## PHYSICAL EXAMINATION

To determine if the death is accidental, we can authorize an autopsy or examination of the body at our own expense and where permitted by law.


_____
President



The Baltimore Life
COMPANIES

# Whole Life Insurance Policy

This is a Whole Life Insurance Policy. Insurance is payable at the Insured's death. Premiums are payable for the period shown on the Policy Data Page. This policy is nonparticipating and is not eligible to receive dividends.

**The Baltimore Life Insurance Company**
**10075 Red Run Boulevard**
**Owings Mills, Maryland 21117-4871**
**1-800-628-5433**
**A Stock Company**



# Simplified Application

## The Baltimore Life Insurance Company

10075 Red Run Boulevard • Owings Mills, MD 21117-4871
800.628.5433 • www.baltlife.com

**All questions in this application are important. Please read and complete carefully.**

**All information below must be provided to avoid processing delays.**

Plan Applied For: Silver Guard Life Pay

☐ Limited Pay    Number of Years: _____

Proposed Insured (First, Initial, Last Name)
John B Reddmann

State of Birth: AR    Country of Birth: US

Date of Birth: ███████    Present Age: 64

Sex: M    Height: ███████    Weight: ███████

Social Security No: ███████

Street Address: ███████

City, State, Zip: ███████

Home Telephone: _____

Work Telephone: _____

E-Mail Address: _____

Occupation: _____

---

Face Amount $ 14000    Premium $ 105.54

Amount paid with application $ 105.54

Premium Mode: ☐ Direct Bill  ☑ Monthly Bank Draft

If Direct Bill: ☐ Annual  ☐ Semi-Annual  ☐ Quarterly

Dividends (if applicable)  ☐ Not Applicable
☐ Benefit Increase    ☐ Paid to Owner
☐ Premium Reduction (only on annual modes)
☐ Accumulations

Automatic Premium Loan:  ☑ Yes  ☐ No

---

Primary Beneficiary: Chantilly Reddmann

Relationship: Daughter, 100%

Social Security No: _____

Contingent Beneficiary: _____

Relationship: _____

Social Security No: _____

---

Payer of Policy if other than Proposed Insured

_____

Relationship: _____

Social Security No: _____

Street Address: _____

City, State, Zip: _____

Home Telephone: _____

E-Mail: _____

---

Owner if other than Proposed Insured

_____

Relationship: _____

Social Security No: _____

Street Address: _____

City, State, Zip: _____

Home Telephone: _____

E-Mail: _____

---

Form 7430(AR)

 

### Please read and sign:

This application is complete and true to the best of my knowledge and belief. The Company is deemed to know only the facts contained in this application. Any policy issued with this application shall not go into force unless the application is completed, the first premium is paid in full, and the application is approved by the Company while the Proposed Insured's condition of health is unchanged from the date of the application.

### Authorization and Acknowledgement

I authorize any physician, medical practitioner, hospital, clinic, other medical or medically-related facility, insurance or reinsuring company, or the Medical Information Bureau, Inc. having information available as to diagnosis, treatment and/or prognosis of me with respect to any physical or mental condition, including alcoholism and/or use of drugs, and any other nonmedical information about me to give to the Company any and all such information. I understand the information obtained by use of this authorization will be used by the Company to determine eligibility for insurance and/or benefits. Any information obtained will not be released by the Company to any person or organization except to reinsuring companies, the Medical Information Bureau, Inc., or other persons or organizations performing business or legal services in connection with my application or claim, or as may be otherwise lawfully required or as I may further authorize. I understand that I may request a copy of this authorization and agree that a photographic copy of this authorization shall be as valid as the original. This authorization shall remain valid for a period of two years and six months from the date it is signed. I acknowledge receipt of the Applicant(s) Pre-Notice.

**Fraud Warning**

Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison.

---

### Important Tax Notice for Policyowner

Under Federal Tax law, the Company is required to ask you to certify your correct Taxpayer Identification Number (TIN) and to include it in any reports of taxable income it makes to the IRS. If you are an individual, your Social Security number is your Taxpayer Identification Number.

**Certification:** I certify that ☐ **I am**  ☒ **I am not** subject to a backup withholding order under Section 3406(a)(1)(c) of the Internal Revenue Code and I am a U.S. person (including a U.S. resident alien). I also certify that the Taxpayer Identification Number on this form is true, correct and complete.

The Internal Revenue Service does not require your consent to any provisions of this document other than the certification to avoid backup withholding.

---

**I certify that I have reviewed the health questions contained on this application and that my responses to these questions have been accurately recorded. I understand that no agent is authorized to advise me that any inaccurate answer is acceptable.**

Application made at <u>Harrisburg AR</u>                    this <u>02</u>          day of <u>January</u>    ,   <u>2009</u>

<table>
<tr><td>(City, State)</td><td>(Day)</td><td>(Month)</td><td>(Year)</td></tr>
</table>

John B Reddmann - Signed Electronically-
01/02/2009 05:32 PM
_____          _____
Signature of Proposed Insured                     Signature of Proposed Owner, if other than Proposed Insured

Form 7430(AR)

- - - - - - - - - - D E T A C H   A T   P E R F O R A T I O N - - - - - - - - - - -

### Conditional Receipt

Received from <u>John B Reddmann</u>                    The sum of $ <u>105.54 (eDraft)</u>

This receipt is given and accepted with the understanding that the insurance applied for shall go into force when the application is completed, the first premium is paid in full, and the application is approved by the Company while the Proposed Insured's condition of health is unchanged from the date of the application.

John B Reddmann - Signed Electronically- 01/02/2009 05:32 PM
Proposed Insured _____  Date <u>01/02/2009</u>

JAMIE D STEELE - Signed Electronically- 01/02/2009 05:32 PM
Agent _____

**THE PREMIUM CHECK MUST BE MADE PAYABLE TO THE BALTIMORE LIFE INSURANCE COMPANY.
DO NOT MAKE THE CHECK PAYABLE TO THE AGENT OR LEAVE THE PAYEE BLANK.**

Form 7430(AR)

XXXXXXXXXXXX:38   2250/88027        AG CHEM                              PAGE  01/04
XXXXXXXXXXXX            outdated.See
XXXXXXXXXXXX            poa
XXXXXXXXXXXX
XXXXXXXXXXXX
XXXXXXXXXXXX



2018R-01075
POINSETT COUNTY, AR
I CERTIFY THIS INSTRUMENT WAS FILED
04/24/2018    01:50:48PM
MISTY RICHARDSON-RUSSELL
CIRCUIT CLERK
BY: _Deborah Dubissed_

**DURABLE POWER OF ATTORNEY**

**STATE OF ARKANSAS**    /
                         /
**COUNTY OF POINSETT**   /

*KNOW ALL MEN BY THESE PRESENTS:*

THAT I, **John Bruno Reddmann, Sr.,** being an adult resident citizen of Poinsett

County, Arkansas, and being more than twenty-one (21) years of age, and also being in all respects

fully capable, competent and of sound mind, have, and by these presents, do hereby make, constitute

and appoint my daughter, Chantilly S. Reddmann, as my true and lawful attorney, with full power

and authority to act in my name, place and stead as follows:

> To exercise, do, or perform any act, right, power, duty, or obligation
> whatsoever that I now have or may acquire the legal right, power, or
> capacity to exercise, do, or perform in connection with, arising out of,
> or relating to any person, item, thing, transaction, business property,
> real or personal, tangible or intangible, or matter whatsoever;

> To ask, demand, sue for, recover, collect, receive, and hold and
> possess all such sums of money, debts, dues, bonds, notes, checks,
> drafts, accounts, deposits, legacies, bequests, devises, interests,
> dividends, stock certificates, certificates of deposit, annuities, pension
> and retirement benefits, insurance benefits and proceeds, documents
> of title, choses in action, personal and real property, intangible and
> tangible property and property rights, and demands whatsoever,
> liquidated or unliquidated, as are now, or shall hereafter become due,
> owing, payable, owned, or belonging to me or in which I have or may
> acquire an interest, and to have, use, and take all lawful ways and
> means and legal and equitable remedies, procedures, and writs in my
> name for the collection and recovery thereof, and to compromise,

EXHIBIT 2

07/29/2021  12:38   2253420027                    AG CHEM                              PAGE  02/04

settle and agree for the same, and to make, execute and deliver for me and in my name all endorsements, acquittances, releases, receipts, or other sufficient discharges for the same;

To lease, purchase, exchange and acquire, and to bargain, contract and agree for the lease, purchase, exchange and acquisition of, and to take, receive and possess any real or personal property whatsoever, intangible or tangible, or interest therein, on such terms and conditions and under such covenants as said attorney-in-fact shall deem proper;

To improve, repair, maintain, manage, insure, rent, lease, sell, release, convey, subject to liens, mortgage, and hypothecate, and in any way or manner deal with all or any part of any real or personal property, intangible and tangible, whatsoever, or any interest therein, which I now own or may hereafter acquire, for me and in my name, and under such terms and conditions, and under such covenants as said attorney shall deem proper;

To engage in and transact any and all lawful business of whatever nature or kind for me and in my name;

To sign, endorse, execute, acknowledge, deliver, receive and possess such applications, contracts, agreements, options, covenants, deeds, conveyances, trust deeds, security agreements, bills of sale, leases, mortgages, assignments, insurance policies, federal and state tax returns, bills of lading, warehouse receipts, documents of title, bills, bonds, debentures, checks, drafts, bills of exchange, notes, stock certificates, proxies, warrants, commercial paper, receipts, withdrawal receipts and deposit instruments relating to accounts, or deposits in, or certificates of deposit of, banks, savings and loan, or other institutions or associations, proofs of loss, evidences of debts, releases, and satisfaction of mortgages, judgments, liens, security agreements and other debts and obligations, and such other instruments in writing of whatever kind and nature as may be necessary or proper in the exercise of the rights and powers herein granted.

07/29/2021  12:38   2253420027          AG CHEM                    PAGE  03/04

I grant to my said attorney-in-fact full power and authority to do and perform all and every act and thing whatsoever requisite, necessary and proper to be done in the exercise of any of the rights and powers herein granted as fully to all intents and purposes as I might or could do if personally present, with full power of substitution or revocation, hereby ratifying and confirming all that my said attorney-in-fact, or substitute or substitutes, shall lawfully do or cause to be done by virtue of this Power of Attorney and the rights and powers herein granted.

This instrument is to be construed and interpreted as a general power of attorney. The enumeration of specific items, acts, rights, or powers herein does not limit or restrict, and is not to be construed or interpreted as limiting or restricting the general powers herein granted to my attorney-in-fact.

This Power of Attorney shall not be affected by my subsequent disability or incapacity. I intend that this Power of Attorney be a durable power of attorney and shall be interpreted and construed in accordance with *Arkansas Code Annotated §28-68-201*, et seq. and all amendments thereto.

John Bruno Reddmann, Sr.

POINSETT COUNTY          2018R-01075          -3-
                                             PAGE 3 OF 4

## ACKNOWLEDGMENT

STATE OF ARKANSAS      /
                                        /
COUNTY OF POINSETT     /

      BE IT REMEMBERED, that on this day before the undersigned, a Notary Public within and for the County and State aforesaid, duly commissioned, qualified and acting, personally appeared the within named **John Bruno Reddmann, Sr.**, to me personally well known, and stated and acknowledged to me that he had signed and executed the within and foregoing Durable Power of Attorney for the consideration, uses and purposes therein set forth.

      IN WITNESS WHEREOF, I have hereunto set my hand and official seal this 12th day of March, 2018.

_Wanda R. Scott_
NOTARY PUBLIC

My Commission Expires:

_9-20-2020_

> WANDA R. SCOTT
> NOTARY PUBLIC-STATE OF ARKANSAS
> POINSETT COUNTY
> My Commission Expires 9-20-2020
> Commission # 12378488